VORYS, SATER, SEYMOUR AND PEASE LLP
Adam Hamburg (SBN 247127)
ashamburg@vorys.com
2211 Michelson Dr. Suite 500
Irvine, CA 92612
Telephone: (949) 526-7908
Facsimile: (949) 526-7908
Attorney for Plaintiff
ASICS AMERICA CORPORATION

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ASICS AMERICA CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>ARIA ADVENTURES LLC, MICHAEL CARINO, and JOHN DOES, 1-10,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS** |

Plaintiff ASICS America Corporation, a California corporation ("Plaintiff" or "ASICS"), brings this action against Defendants Aria Adventures LLC ("Aria Adventures"), Michael Carino ("Carino"), and John Does 1-10 (collectively, "Defendants") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair and deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (4) unfair competition under California common law; and (5) tortious interference with contract and business relations.  These claims arise

from Defendants' misappropriation of ASICS' trademarks in connection with Defendants' unlawful and unauthorized sale of non-genuine products bearing ASICS' trademarks on the Internet.

## PARTIES

1.      ASICS is a corporation, organized under the laws of California, with its principal place of business located in Irvine, California.

2.      Defendant Aria Adventures is a limited liability company, organized under the laws of Georgia, with its principal place of business located in Suwanee, Georgia.  According to corporate records filed with the Georgia Secretary of State, Aria Adventures' principal office and registered agent address is 4505 Dorset Lane, Suwanee, GA 30024 (the "Dorset Lane Address").  Aria Adventures operates or assists in the operation of an online storefront on www.amazon.com ("Amazon") that is currently called "Amazengzon" with a Merchant ID of A3N97P59ERXE6N (the "Amazon Storefront").[1]  Aria Adventures sells infringing products bearing ASICS' trademarks through the Amazon Storefront and does business throughout the United States through the Amazon Storefront, including in California.

3.      Defendant Carino is a natural person who, upon information and belief, resides at the Dorset Lane Address.  Carino operates or assists in the operation of the Amazon Storefront.  Carino sells infringing products bearing ASICS' trademarks through the Amazon Storefront and does business throughout the United States through the Amazon Storefront, including in California.

4.      Filings with the Georgia Secretary of State identify Carino as the registered agent and organizer of Aria Adventures and do not identify any other individuals as corporate officers of Aria Adventures.  Accordingly, upon information

---

[1] Every storefront on Amazon is assigned a "Merchant ID number" that does not change over time even if the formal "name" of a storefront is changed.  Even if Defendants change the name of the Amazon Storefront at some time in the future, it can always be accessed at the storefront link which includes the Merchant ID number of the Amazon Storefront: https://www.amazon.com/sp?seller=A3N97P59ERXE6N.

and belief, Carino is in control of, a principle of, and primarily responsible for the actions of Aria Adventures.

5. ASICS asserts claims against Carino in his individual capacity and also in his capacity as a corporate officer of Aria Adventures. Upon information and belief, both Carino in his individual capacity and Aria Adventures assist in and are responsible for the operation of the Amazon Storefront.

6. Alternatively, as sole manager or member of Aria Adventures, Carino directs, controls, ratifies, participates in, or is the moving force behind the acquisition and sale of infringing products bearing ASICS' trademarks by Aria Adventures. Upon information and belief, Carino personally participates in the acquisition and sale of infringing products by Aria Adventures. Accordingly, Carino is personally liable for infringing activities carried out by Aria Adventures without regard to piercing the corporate veil.

7. Alternatively, upon information and belief, Aria Adventures follows so few corporate formalities and is so dominated by Carino that it is merely an alter ego of Carino. Accordingly, ASICS is entitled to pierce the corporate veil of Aria Adventures and hold Carino personally liable for the infringing activities of Aria Adventures.

8. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise, of Defendants John Does 1 through 10 ("Doe Defendants") are unknown to ASICS. Therefore, ASICS sues these Defendants by a fictitious name. ASICS is informed and believes, and on that basis alleges, that the Doe Defendants include persons and entities assisting or acting in connection with the actions complained of herein and include persons and entities that are responsible in some manner for the acts, occurrences, and liability hereinafter alleged and referenced. The Doe Defendants are unknown natural persons and/or corporations/business entities that unlawfully acquired, distributed, or sold products bearing ASICS' trademarks. When the true names, involvement, and capacities of

1  these parties are ascertained, ASICS will seek leave to amend this Complaint
2  accordingly.

3                              **JURISDICTION AND VENUE**

4        9.    This Court has subject-matter jurisdiction over this matter pursuant to
5  28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  ASICS' federal claims
6  are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims
7  arising under the laws of the State of California are substantially related to its federal
8  claims such that they form part of the same case or controversy under Article III of
9  the United States Constitution.

10       10.    This Court has personal jurisdiction over Defendants because they have
11  expressly aimed tortious activities toward the State of California and established
12  sufficient minimum contacts with California by, among other things, advertising and
13  selling infringing products bearing ASICS' trademarks to consumers within
14  California through a highly interactive commercial website, through the regular
15  course of business, with the knowledge that ASICS is located in California and is
16  harmed in California as a result of Defendants' sales of infringing products to
17  California residents.  Defendants know that ASICS is located in California, among
18  other reasons, because they received a cease-and-desist letter informing them that
19  ASICS is located in California and is harmed in California by their unlawful actions.
20  ASICS' claims arise out of Defendants' sales of infringing products bearing ASICS'
21  trademarks to California residents through the regular course of business.

22       11.    Defendants continue to engage in these actions despite being put on
23  notice of their illegal conduct and the impendency of this action.

24       12.    Venue is properly founded in this judicial district pursuant to 28 U.S.C.
25  § 1391(b), because a substantial part of the events giving rise to the claims herein
26  occurred within this judicial district.

27  ///
28  ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

# FACTUAL ALLEGATIONS

## ASICS and Its Trademarks

13.    ASICS markets and sells high-quality athletic footwear, apparel, sportstyle, and accessory products under the ASICS® brand name.

14.    ASICS permits its products to be purchased by end-user consumers in the United States only from ASICS itself or from sellers who are expressly authorized by ASICS to sell ASICS products ("Authorized Retailers").

15.    ASICS permits Authorized Retailers to sell ASICS products in approved channels only and requires Authorized Retailers to abide by agreements, policies, and other rules that impose requirements relating to quality controls, customer service, and other sales practices (collectively, the "ASICS Terms").

16.    ASICS devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.  By allowing end-user consumers to purchase ASICS products only from ASICS itself or from Authorized Retailers who are required to follow the quality controls and other requirements in the ASICS Terms, ASICS ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the ASICS brand.  In the highly competitive athletic footwear and apparel market, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

17.    To promote and protect the ASICS brand, ASICS owns or is the exclusive licensee of numerous trademarks with the United States Patent and Trademark Office, including but not limited to: ASICS® U.S. Trademark Registration Numbers 1,768,724, 1,780,294, 1,128,988, 3,305,197, and 3,525,787, which have become incontestable (the "ASICS Trademarks").

18.    The registration for each of the ASICS Trademarks is valid, subsisting, and in full force and effect.

19.    ASICS actively uses, advertises, and markets goods and services under

the ASICS Trademarks in commerce.

20.     Consumers recognize the ASICS Trademarks as being associated with high-quality athletic footwear, apparel, sportstyle, and accessory products.

21.     Due to the quality and exclusive distribution of ASICS' products, and because ASICS is recognized as the source of high-quality products, the ASICS Trademarks have enormous value.

22.     ASICS is the exclusive licensee of the ASICS Trademarks in the United States.   The ASICS Trademarks are owned by ASICS' Japanese parent company, ASICS Corporation.   Although ASICS is the exclusive licensee in the United States, ASICS Corporation retains ownership of and uses the ASICS Trademarks in other markets around the world.

23.     Additionally, ASICS Corporation exercises quality control over ASICS' use of the ASICS Trademarks.   As explained more thoroughly in this complaint, *see infra* ¶¶ 54-78, ASICS has implemented extensive quality control measures on its products to ensure that consumers receive the high-quality products that they have come to associate with the ASICS Trademarks.   Because of these quality control measures, ASICS Corporation reasonably relies on ASICS to maintain the quality of products bearing the ASICS Trademarks that are sold in the United States.

### Online Marketplaces and the Challenges They Present
### to ASICS Product Quality

24.     E-commerce retail sales have exploded over the past decade.   From 2009 through the second quarter of 2025, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 16.3%. *E-Commerce Retail Sales as a Percent of Total Sales*, Federal Reserve Bank of St. Louis (Aug. 19, 2025), https://fred.stlouisfed.org/series/ECOMPCTSA.

25.     In 2024, consumers spent $1.192 trillion on e-commerce sales, a 7.5% increase from 2023.   See Abbas Haleem, *US ecommerce sales in 2024 more than double those of 2019*, Digital Commerce 360 (Mar. 3, 2025),

https://www.digitalcommerce360.com/article/usecommerce-sales/. The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2024, United States consumers spent more than $500 billion in ecommerce sales on Amazon and Walmart.

26.    While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

27.    Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them. Instead, consumers must trust that the product they receive from an online order will be authentic and of the quality they expect and typically receive from the brand owner.

28.    Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

29.    Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers. It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels. *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html; Alexandra Berzon et al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or*

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1 *Mislabeled Products*, THE WALL STREET JOURNAL, Aug. 23, 2019,
2 https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-
3 thousands-of-banned-unsafe-or-mislabeled-products-11566564990.     It is also
4 common for unauthorized sellers to sell products that are previously used—including
5 products retrieved from dumpsters—as "new" on online marketplaces. *See* Khadeeja
6 Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL STREET
7 JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-
8 on-amazonliterally-11576599910.

9      30.   The business press has also reported extensively on how there is an
10 "epidemic" of counterfeit products being sold on online marketplaces that diverters
11 are exploiting because they know consumers trust marketplaces and think the
12 products they are buying through the marketplaces are genuine. *See* Spencer Soper,
13 *Amazon Gets Real About Fakes*, Bloomberg, Nov. 28, 2016,
14 https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes;
15 Jay Greene, *How Amazon's quest for more, cheaper products has resulted in a flea*
16 *markets of fakes*, THE WASHINGTON POST, Nov. 14, 2019,
17 https://www.washingtonpost. com/technology/2019/11/14/how-amazons-quest-more-
18 cheaper-products-has-resulted-flea-market-fakes/?arc404=true.

19      31.   The problem of sales of counterfeit and other poor-quality products on
20 online marketplaces has become so serious that, in November 2019, the United States
21 Senate Finance Committee issued a bipartisan report on the issue.  The Committee
22 found that the rise of e-commerce has fundamentally changed how consumers shop
23 for products and that, as e-commerce has grown, counterfeit goods and products that
24 "violate a right holder's trademark or copyright" are being sold at an accelerating rate
25 on e-commerce platforms.   The Committee concluded that these sales are a
26 "significant threat" to rights holders' brands and to consumers, and that under current
27 law it is up to rights holders to protect their intellectual property rights online. *See*
28 Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory*

1    *Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019,

2    https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes

3    %20%20(2019-11-07).pdf.

4        32.    In 2020, the Department of Homeland Security published a report noting

5    that online marketplaces can facilitate the sale of counterfeit goods and that

6    "American consumers shopping on e-commerce platforms and online third-party

7    marketplaces now face a significant risk of purchasing counterfeit or pirated goods."

8    Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated*

9    *Goods*    (Jan.    24,    2020),    available    at

10   https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-

11   pirated-goods-report_01.pdf, at 7.    The report stated that consumers on online

12   marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have

13   been surprised to discover that upon completion of an online sales transaction, that

14   the order will be fulfilled by an unknown third-party seller." *Id*. at 14-15, 38.    To

15   mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of

16   third-party sellers." *Id.* at 35.

17       33.    In its 2018, 2019, 2020, 2021, and 2022 annual reports to its

18   shareholders, Amazon acknowledged that third party sellers on its marketplace are

19   selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially

20   different" from the product that was described to consumers. *See, e.g.,* Amazon.com,

21   Inc., Annual Report (Form 10-K), at 8 (Feb. 2, 2023), *available at*

22   https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/336d8745-ea82-40a5-9acc-

23   1a89df23d0f3.pdf   Amazon conceded that these actions are "violating the proprietary

24   rights of others" and warned its investors that it could be liable for "unlawful

25   activities" of Amazon third-party sellers.

26       34.    Because brand owners have no relationship with or control over

27   unauthorized sellers, brand owners have no ability to exercise their quality controls

28   over products sold by unauthorized sellers or to ensure the products are safe and

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1    authentic.    A brand owner's inability to exercise control over the quality of its

2    products can present serious risks to the health and safety of consumers.

3        35.    The structure, construction, and user interface of online marketplaces

4    also pose threats to a brand owner's ability to maintain its goodwill, reputation, and

5    brand integrity.

6        36.    When purchasing products on an online marketplace, customers are

7    ordinarily not informed whether a seller of a product is authorized by the brand

8    owner.    Additionally, the interface design of many online marketplaces causes

9    consumers to falsely believe that they are always purchasing from the brand owner

10   or, at minimum, from an authorized seller that is selling under the brand owner's

11   oversight and with the brand owner's approval.    Consumers who purchase on

12   Amazon are particularly likely to experience this confusion because, on Amazon, all

13   sellers of a product are listed under a single product listing that states "Brand [name

14   of brand]" immediately under the title of the product, even though many products are

15   sold on Amazon by unauthorized sellers that have no relationship with the brand

16   owner.

17       37.    For all of these reasons, a vast number of consumers purchase products

18   on online marketplaces without recognizing that they purchased from an unauthorized

19   seller that does not (and cannot) follow the brand owner's quality controls.

20       38.    When a consumer purchases on an online marketplace and receives a

21   product that is damaged, defective, or of otherwise poor quality, the consumer is

22   much more likely to associate the problem with the brand/manufacturer rather than

23   the product seller.

24       39.    Online marketplaces also give disgruntled customers a powerful and

25   convenient forum to air their grievances about problem products:    online product

26   reviews.    Any consumer who is dissatisfied with a product received can post a review

27   on the marketplace for all other consumers across the world to see.    These reviews,

28   which often remain permanently attached to products, will often criticize the brand

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1  rather than the marketplace seller that sold the product.

2     40.    Online product reviews significantly impact a brand's reputation.

3  Survey results show that 82% of United States adults "sometimes" consult online

4  reviews for information when they consider buying a new product online, and 40%

5  "always" or "almost always" consult such reviews.    Aaron Smith & Monica

6  Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016,

7  http://www.pewinternet.org/2016/12/19/online-reviews/.

8     41.    Studies and surveys consistently show that consumers place

9  extraordinary trust in online product reviews.  For instance, research has shown that

10 42% of online consumers now trust online reviews as much as personal

11 recommendations from friends and family.  *See* Sammy Paget, *Local Consumer*

12 *Review Survey 2025*, BRIGHTLOCAL, https://www.brightlocal.com/research/local-

13 consumer-review-survey/.    Because consumers so heavily "rely on reviews when

14 they're shopping online," the Federal Trade Commission has begun suing companies

15 who post fake reviews of their products on online marketplaces.  Megan Henney,

16 FTC cracking down on fake Amazon reviews, FOX BUSINESS, Feb. 28, 2019,

17 https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-

18 reviews (quoting a press release from the director of the FTC).

19    42.    Consumers also pay special attention to negative online reviews of

20 products because negative reviews are generally outnumbered by positive reviews

21 and consumers believe negative reviews are particularly trustworthy due to their

22 scarcity.  *See* Caroline Beaton, *Why You Can't Really Trust Negative Online Reviews*,

23 THE    NEW    YORK    TIMES,    June    13,    2018

24 https://www.nytimes.com/2018/06/13/smarter-living/trust-negative-product-

25 reviews.html.    According to one study, 85% consumers will intentionally seek out

26 negative reviews when shopping online.  Faith Hinz, *The Growing Power of Reviews*,

27 POWERREVIEWS,    2018,    https://www.powerreviews.com/wp-

28 content/uploads/2018/03/The-Growing-Power-of-Reviews.pdf.    As a result, brands

are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

43.    Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's reputation and goodwill.

**ASICS Has Been the Target of Negative Online Marketplace Reviews from Customers Who Purchased Products from Unauthorized Sellers**

44.    Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on the product listing.    These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its placement in search results, ultimately causing the brand to suffer damage to its goodwill and lost sales.

45.    Numerous consumers have written negative reviews of ASICS products being offered for sale by unauthorized sellers on online marketplaces.    In these reviews, many of which appear on listings of products that have been offered for sale by Defendants, consumers have given misappropriated ASICS products low "ratings" and complained of receiving products that were damaged, previously used, dirty, and missing components of the shoe.

46.    For example, Defendants have sold on Amazon the ASICS product seen in the screenshot below:



47.    As seen in the below screenshots, consumers have left negative reviews of this product complaining that they received products that were previously used, damaged, dirty, and missing insoles:

 Sally Mogren

★☆☆☆☆  **Very disappointed**

Reviewed in the United States on October 12, 2025

**Verified Purchase**

Not is good shape

We expected new shoes

These are used and dirty

 Brajesh Sharma

★☆☆☆☆  **Disappointed**

Reviewed in the United States on September 13, 2025

**Verified Purchase**

Not expected to receive a used shoe, it is supposed to be a gift. Super disappointed.



 Mary

★☆☆☆☆  **Shoes were very USED - yuk!**

Reviewed in the United States on July 17, 2025

Size: 11.5  |  Color: Black/Concrete  |  **Verified Purchase**

I was sent USED shoes! These had clearly been worn a lot, as the bottoms were worn thin in spots. Just awful.

 Melvin T.

★☆☆☆☆  **Floor sample not brand new**

Reviewed in the United States on June 24, 2025

Size: 8.5  |  Color: White/Cool Grey  |  **Verified Purchase**

I just bought ASICS Cumulus 26 on June 2025. They sent me a floor sample which was tried on by others. Although it's not used but it's not brand new and the box was out of shape and had little damage on one corner. I would not recommend anyone to buy from Asics if you want a brand new shoes. I would rather buy it from local stores to get a pair of brand new shoes. This is the second times they did that to me.

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1
2
3
4
5
6
7
8

Jen

★☆☆☆☆  **Shoes arrived used, soles were dirty and marked with pencil**
Reviewed in the United States on May 26, 2025
**Verified Purchase**

This pair of shoes arrived obviously used, not just tried on, but arrived dirty and used. I'm not sure how the previous return was even processed. The soles of both shoes were dirty, to include pencil markings. Highly disappointed in this purchase.

   

9
10
11
12
13
14

Nastasha Nelle

★☆☆☆☆  **Previously used**
Reviewed in the United States on May 24, 2025

Size: 13 Wide  |  Color: White/Cool Grey  |  **Verified Purchase**

They came with no box which would have been fine however they had no tags and were obviously used previously and full of what I believe was animal hair..a lot of animals hair. Frankly they were gross.

15
16
17
18
19
20
21
22
23

Amazon Customer

★☆☆☆☆  **Not happy**
Reviewed in the United States on October 26, 2024
**Verified Purchase**

Bought these shoes and received them the other day. Got to looking at them and they had no insole's in them, couldn't get anyone to answer any messages or emails…… who the hell sell's shoes without insole's. NOT IMPRESSED AT ALL!!!!!!

 

3 people found this helpful

24      48.    Defendants have also sold on Amazon the ASICS product seen in the

25  screenshot below:

26  ///

27  ///

28  ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**



49.    As seen in the below screenshots, consumers have left negative reviews of this product complaining that they received products that were previously used, dirty, and missing inserts:







**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**



50.    Defendants have also sold on Amazon the ASICS product seen in the screenshot below:



51.    As seen in the below screenshots, consumers have left negative reviews of this product complaining that they received products that were previously used, damaged, dirty, and different from what was ordered:



**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1

2
> **Summer3367**
> ⭐☆☆☆☆ **Delivered Damaged**

3
> Reviewed in the United States on July 11, 2025
>
> Size: 9  |  Color: Black/Graphite Grey  |  **Verified Purchase**

4
> I am really disappointed. The shoes that arrived in the mail were completely used. The rubber is

5
> completely eroded. I am going to send them back. I would recommend you go to a real Asics store. Do
> not buy them on Amazon. I am so disappointed. I start a new job next week and really wanted the

6
> most updated version of Nimbus so I wouldn't get back pain. Now I am going to have to find black
> shoes elsewhere.

7

8
>  

9

10

11
> **Cody Wingert**
> ⭐☆☆☆☆ **Sent Used Shoes**

12
> Reviewed in the United States on May 27, 2025
>
> Size: 10  |  Color: Birch/Indigo Blue  |  **Verified Purchase**

13

14
> I was sent used shoes. Obviously had been worn and returned. Disappointing for how expensive these
> shoes are. Don't think expecting new shoes is too much to ask.

15
> One person found this helpful

16    52.    The foregoing reviews are only a small sample of the negative reviews

17  of ASICS products that have been posted on the Amazon platform.

18    53.    Amazon does not allow product reviews to identify the seller that sold

19  the product that is the subject of the product review.  Given that unauthorized sellers

20  are not subject to ASICS' quality controls, it is likely that some of the foregoing

21  negative reviews—and the many similar reviews of ASICS products that appear on

22  the Amazon website—were written by consumers who purchased products bearing

23  the ASICS Trademarks from Defendants.

24  **ASICS Has Implemented Quality Controls throughout Its Authorized Channels**

25  **of Distribution to Combat the Problems Presented By Online Marketplaces,**

26  **Protect the Value of the ASICS Trademarks, and Ensure Customers Receive the**

27  **Genuine, High-Quality Products They Expect from ASICS**

28    54.    The above reviews show how sales of poor-quality ASICS products

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

disappoint ASICS' consumers and cause significant harm to the reputation and goodwill of ASICS and its brand. To protect itself and consumers from these harms, ASICS implemented a quality control program that applies to all of its Authorized Retailers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

55. ASICS' distribution controls are a quality control measure intended to minimize the risk and reputational damage caused by the illegal sale of poor-quality products bearing the ASICS Trademarks by unauthorized sellers, like Defendants, who do not abide by ASICS' quality controls. The goal of ASICS' quality control program is to ensure that consumers who buy ASICS products, including ones buying online, receive the high-quality products and services that they expect with the ASICS name. By preventing consumers from receiving poor-quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the ASICS brand.

56. ASICS abides by its quality control requirements and requires its Authorized Retailers to abide by them as well.

57. ASICS' ability to exercise its quality controls is essential to the integrity and quality of ASICS products, as well as the value of the ASICS Trademarks and other intellectual property.

58. ASICS' quality controls begin with requiring that all outside sales of its products take place through ASICS' own website and stores, or through Authorized Retailers. This basic step ensures that everyone who is selling ASICS products is ultimately subject to ASICS' quality control requirements.

59. The ASICS Terms limit to whom and where Authorized Retailers may sell ASICS products. To prevent persons outside of ASICS' quality controls from acquiring and reselling ASICS products, the ASICS Terms prohibit Authorized Retailers from selling ASICS products to any third party who intends to resell the products. Authorized Retailers are permitted to sell ASICS products only to end-user

1    consumers.

2        60.    Authorized Retailers are also prohibited from selling ASICS products on

3    any website unless they first obtain written consent from ASICS.

4        61.    These restrictions are essential to ASICS' ability to exercise its quality

5    controls over ASICS products because they prevent unauthorized sellers from

6    obtaining and reselling ASICS Products and allow ASICS to know where all of its

7    products are being sold online by Authorized Retailers.  If a quality issue arises

8    through an online sale, ASICS can identify the Authorized Retailer that made the

9    sale, contact the Authorized Retailer, and address the issue immediately.  ASICS is

10   unable to take such action against unauthorized sellers because it does not know who

11   those sellers are and cannot obtain their cooperation in addressing any product quality

12   issues that may arise.

13       62.    In addition to restricting where and how Authorized Retailers can sell

14   ASICS Products, the ASICS Terms also require Authorized Retailers to follow

15   numerous quality control requirements related to the inspection, handling, storage,

16   and display of ASICS products.

17       63.    To ensure that customers receive the genuine and high-quality products

18   they expect from ASICS, the ASICS Terms require Authorized Retailers to inspect

19   all ASICS products for any damage, defects, evidence of tampering, and other non-

20   conformance and remove all such products from inventory.  Authorized Retailers are

21   prohibited from selling damaged or defective products.  Further, to assist in

22   identifying any product quality issues, Authorized Retailers are required to report any

23   defects to ASICS or the Authorized Retailer's designated carrier.

24       64.    The ASICS Terms also require that Authorized Retailers store ASICS

25   products in accordance with guidelines issued by ASICS.  This requirement helps

26   ensure that ASICS products are stored properly and are not damaged prior to being

27   shipped to the consumer.

28   ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

65.    To avoid consumer confusion and ensure that customers receive genuine ASICS products, Authorized Retailers must sell ASICS products in their original packaging and are prohibited from relabeling, repackaging, or altering ASICS products or any accompanying label(s) or literature, unless instructed by ASICS.

66.    Authorized Retailers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on ASICS products, including any SKU, UPC code, or other identifying information.

67.    The ASICS Terms give ASICS the right to monitor and audit Authorized Retailers by inspecting their facilities and records relating to ASICS Products, to ensure their compliance with ASICS' quality control requirements. Authorized Retailers also must cooperate with ASICS with respect to any product recall or other consumer safety information dissemination effort conducted by ASICS regarding ASICS products.

68.    The ASICS Terms also require Authorized Retailers to provide various customer services to their customers.

69.    For example, Authorized Retailers must familiarize themselves with the features of all ASICS products kept in their inventory so that they can advise customers on the selection and best use of ASICS products. Following the sale of genuine ASICS products, Authorized Retailers must provide ongoing support to consumers and prompt replies to their inquiries.

70.    ASICS' quality control and customer service requirements are legitimate and substantial and have been implemented so that ASICS can control the quality of goods manufactured and sold under the ASICS Trademarks, and to protect consumers as well as the value and goodwill associated with the ASICS Trademarks.

71.    ASICS' quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor-quality products. Consumers would find it material and relevant to their purchasing decision to know whether an ASICS product that they were considering

1  buying was being sold by an Authorized Retailer who is subject to ASICS' quality

2  control and customer service requirements or whether the product is being sold by an

3  unauthorized seller who is not subject to, and does not abide by, ASICS' quality

4  controls and over whom ASICS is unable to exercise its quality controls.

**Given the Flood of Poor-Quality Products Being Sold Online and**
**Consumers' Inability to Inspect Such Products before Purchase, ASICS Imposes**
**Additional Requirements on Its Authorized Retailers Who Sell Online**

8       72.    As shown in consumer reviews cited above ¶¶ 46-51, ASICS products

9  sold online are more susceptible to quality and authenticity problems as consumers

10 cannot see and try on the product before they buy it.  These problems are especially

11 severe on online marketplaces such as Amazon, where sellers can conceal the fact

12 that they are an unauthorized seller and many sellers may share a single product

13 listing page.

14      73.    Given these heightened risks to consumer satisfaction and the value of

15 its trademarks that are posed by online sellers, ASICS imposes certain additional

16 quality control requirements on Authorized Retailers who sell ASICS products

17 online.

18      74.    Authorized Retailers are prohibited from selling ASICS products on any

19 website, or through any online marketplace storefront or account, unless they first

20 apply for and receive prior written approval from ASICS to do so.  To obtain ASICS'

21 approval, Authorized Retailers must submit applications in which they provide

22 information about their business, identify all their sources of ASICS products, and list

23 the specific websites or online marketplaces where they wish to sell products.

24 Applicants then undergo vetting by ASICS that includes review of their business

25 operating record and online review history.

26      75.    If an Authorized Retailer is approved to sell online (thus becoming an

27 "Authorized Online Seller"), the Authorized Retailer may sell ASICS products online

28 only on the websites or through the online marketplace storefronts or accounts that

expressly approved by ASICS ("Authorized Websites") and only if it complies with additional, heightened quality control requirements that are applicable to the particular authorized online sales. These heightened quality controls include, but are not limited to, requirements around product branding, image use, disclosures to consumers, order fulfilment, and steps to ensure consumer satisfaction.

76.     The additional quality control requirements that ASICS imposes on its Authorized Online Sellers are legitimate and substantial and have been implemented to allow ASICS to carefully control the quality of ASICS products that are sold online and quickly address any quality issues that arise.

77.     ASICS' additional quality controls are also material, as they have been implemented to ensure that consumers purchasing ASICS products online receive genuine, high-quality ASICS products that abide by ASICS' quality controls. Consumers purchasing ASICS products online would find it relevant to their purchasing decision to know whether the product they are buying is sold by an Authorized Online Seller who is subject to, and abides by, ASICS' quality controls.

78.     ASICS regularly audits its Authorized Online Sellers and monitors Authorized Websites to ensure that Authorized Online Sellers are adhering to ASICS' quality control requirements.

### Genuine ASICS Products Come with ASICS' Limited Warranty; Defendants' Products Do Not

79.     ASICS products purchased from ASICS or ASICS' Authorized Retailers come with the ASICS Limited Warranty (the "ASICS Warranty").

80.     The ASICS Warranty provides that customers can receive a repair or replacement product if a product has a defect in manufacturing, materials, or workmanship during the warranty period applicable to the product. The complete ASICS Warranty statement can be viewed on the asics.com website—see https://www.asics.com/us/en-us/warranty-form/—and is incorporated herein.

81.     As discussed above, ASICS cannot ensure the quality of the products

sold by unauthorized sellers, like Defendants, who are not subject to ASICS' quality controls. For this reason, the ASICS Warranty does not cover ASICS products sold by unauthorized sellers, like Defendants, who do not comply with ASICS' quality controls and standards. Indeed, the ASICS Warranty specifically states: "ASICS reserves the right to reject any warranty claim from a Consumer related to products purchased from unauthorized sellers, including unauthorized internet sites."

82.    The ASICS Warranty is a material component of genuine ASICS products. Consumers who purchase ASICS products with the ASICS Warranty receive the peace of mind that they are receiving a good quality product which ASICS stands behind, and that if a defect occurs, they have the ability to have the product repaired or replaced.

83.    Consumers would find it material and relevant to their purchasing decision to know whether an ASICS product they were considering buying was covered by the ASICS Warranty. If a consumer knew a product did not come with the ASICS Warranty, the consumer would be less likely to purchase the product.

### Defendants are Not Authorized Retailers and Are Illegally Selling Non-Genuine Products Bearing the ASICS Trademarks

84.    Due to the risks to consumers and the reputational concerns associated with the illegal sale of products bearing the ASICS Trademarks by unauthorized Internet sellers, ASICS actively monitors the sale of its products online.

85.    In the course of this monitoring, ASICS discovered a high volume of products bearing the ASICS Trademarks being illegally sold by Defendants on Amazon under the storefront name "Amazengzon."

86.    After ASICS discovered products bearing the ASICS Trademarks being illegally sold on the Amazon Storefront, ASICS investigated the storefront to determine who was operating the storefront.

87.    In an attempt to avoid detection, the Amazon Storefront incorrectly lists its "Business Name" as "Aria Ventures" rather than "Aria Adventures LLC," its legal

name.  However, after conducting an investigation, ASICS connected the Amazon Storefront to Defendants, as the Dorset Lane Address on the storefront is the same as the principal and registered agent address for Aria Adventures and upon information and belief, is also Carino's home address.  *See* https://www.amazon.com/sp?seller=A3N97P59ERXE6N/.

88.   On or about September 30, 2025, counsel for ASICS sent Defendants a cease-and-desist letter, demanding that they immediately cease selling products bearing the ASICS Trademarks.

89.   This letter further notified Defendants that they were injuring ASICS in California through their illegal actions and that they would be subject to personal jurisdiction in California if they continued to engage in their conduct.

90.   This letter also notified Defendants that ASICS has contracts with its Authorized Retailers that prohibit Authorized Retailers from selling ASICS products to unauthorized resellers, and that Defendants will be liable for tortiously interfering with those contracts if they continue to purchase products bearing ASICS' Trademarks from Authorized Retailers for the purpose of reselling them.

91.   Defendants did not respond to this letter and continued to sell products bearing the ASICS Trademarks on the Amazon Storefront.

92.   On or around October 16, 2025, counsel for ASICS sent Defendants a letter informing Defendants of their obligations to preserve documents and other evidence related to the dispute.  The letter also reminded Defendants that they are subject to personal jurisdiction in California.

93.   As of the time of filing, Defendants have not responded to any of ASICS' letters and continue to advertise and sell products bearing the ASICS Trademarks through the Amazon Storefront.

94.   Defendants' disregard of ASICS' cease-and-desist letters and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

- 24 -

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

95.   Defendants have sold—and are continuing to sell—infringing products bearing the ASICS Trademarks through their Amazon Storefront.

96.   Upon information and belief, through their storefronts on the highly interactive Amazon website, Defendants accept and fulfill orders from California residents for products bearing the ASICS Trademarks and cause substantial quantities of infringing products bearing the ASICS Trademarks to be shipped to persons located in California through the regular course of business.  Defendants have taken no steps to prevent persons located in California from purchasing products from their Amazon Storefront.

**Defendants Are Not Subject to, Do Not Abide by, and Interfere with ASICS' Quality Control Requirements**

97.   Defendants are not Authorized Retailers of ASICS products, and do not abide by ASICS' quality control and customer service requirements that ASICS requires Authorized Retailers to follow.

98.   Defendants' failure to abide by the ASICS Terms prevents ASICS from exercising control over the quality of products Defendants sell bearing the ASICS Trademarks.  Unlike with its Authorized Online Sellers, ASICS cannot monitor or audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

99.   Because the products Defendants sell bearing the ASICS Trademarks are not subject to, do not abide by, and interfere with ASICS' quality control and customer service requirements, they are not genuine ASICS products.

**Defendants Are Infringing the ASICS Trademarks by Selling Products Bearing the ASICS Trademarks That Are Not Subject to, Do Not Abide By, and Interfere with ASICS' Quality Control Requirements**

100.   Consumers on Amazon can leave reviews of sellers as well as products. Consumer reviews of Defendants' Amazon Storefront show that Defendants have

- 25 -

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1  sold numerous poor-quality products to consumers.

2      101.   For example, several consumers have complained about receiving used

3  shoes that were advertised as new when purchasing from Defendants' Amazon

4  Storefront.[2]

5

6  ★☆☆☆☆    "Never shipped and said Men's shoes when ordered
            and then showed women's shoes when order was
7           placed. "

8           By Brad Speer on October 29, 2025.

9           **Message from Amazon:** This item was fulfilled by
            Amazon, and we take responsibility for this
10          fulfillment experience.

11

12 ★☆☆☆☆    "Wrong color. They advertise one and send you
            another. It happened twice. Terrible experience. "
13
            By Ramon Chacin on July 11, 2025.
14
            **Message from Amazon:** This item was fulfilled by
15          Amazon, and we take responsibility for this
            fulfillment experience.
16

17 ★☆☆☆☆    "The shoes came worn and dirty with gum and leaves
            stuck to the bottom of the sole. For two hundred
18          dollars, this is unacceptable. I'd leave a picture of
            what they looked like when I opened the box it
19          came in, but the review box won't let me. "

20          Read less

21          By Sonic Tonic on March 17, 2025.

22          **Message from Amazon:** This item was fulfilled by
            Amazon, and we take responsibility for this
23          fulfillment experience.

24 [2] Many of the negative reviews on Defendants' Amazon Storefronts are stricken
    through.  Third party sellers on Amazon are able to request that Amazon strike
25  through negative reviews under certain circumstances.  Defendants have improperly
    and deceptively asked Amazon to do so for many listings, implying that these issues
26  are the fault of Amazon.  Although Amazon has added comments to some of these
    reviews stating that Amazon takes "responsibility" for the "fulfillment experiences"
27  described in the reviews, the issues and complaints that customers address in these
    reviews are clearly the fault of Defendants rather than a fulfillment problem, like
28  delivering a product to the wrong address, that could be attributable to Amazon rather
    than Defendants.

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

★☆☆☆☆ "I've ordered a size 10 pair of shoes, received left shoe size 10 and right shoe size 8.5. Return process a complete nightmare from my location. Would not recommend this seller. If you just verify shoe sizes before shipping, it would not turn into a disappointment for customers."

Read less

By Amazon Customer on March 13, 2025.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

★☆☆☆☆ "Got sent the wrong pair of shoes and they were obviously already used and returned by someone else!"

By Amazon Customer on July 21, 2024.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

★☆☆☆☆ "Ordered wide and it wasn't wide, waited forever for shipping for a item not as described, garbage seller, absolutely do not recommend, I wish I'd checked the other reviews first, please don't make my mistake and trust these guys"

Read less

By Ian, 29 on May 16, 2024.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

102.    These types of complaints about Defendants are typical of the complaints made about the products sold and the customer service provided by unauthorized sellers.   ASICS allows its products to be sold only by Authorized Retailers, who are subject to and must follow the quality control and customer service requirements in the ASICS Terms, to prevent customers who purchase ASICS products from suffering experiences like those described in the above complaints

about Defendants.

103.   The negative reviews of Defendants' Amazon Storefront, along with the numerous negative reviews on Amazon of ASICS products that Defendants have sold, *see supra* ¶¶ 46-51, show that Defendants are not carrying out the quality-control inspection, storage, or handling requirements that ASICS requires Authorized Sellers to follow for ASICS products.  Instead, Defendants are selling products bearing the ASICS Trademarks to consumers that are previously used, damaged, dirty, and incorrect.  These sales cause customers to write highly negative reviews of ASICS products that harm ASICS' reputation and hurt the placement of ASICS products in search results.

104.   Defendants' failure to abide by the ASICS Terms prevents ASICS from exercising control over the quality of products Defendants sell bearing the ASICS Trademarks.  Unlike with its Authorized Online Sellers, ASICS cannot monitor or audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

105.   Through their unauthorized use of the ASICS Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls as genuine ASICS products.  In reality, however, the products that Defendants sell are materially different from genuine ASICS products—and are not genuine products—because they are not subject to, do not abide by, and interfere with ASICS' quality control and customer service requirements that Authorized Sellers must follow.

**Defendants Are Infringing the ASICS Trademarks by Selling Products Bearing the ASICS Trademarks that Do Not Come with the ASICS Warranty**

106.   As set forth above, genuine ASICS products purchased from ASICS or ASICS' Authorized Retailers who comply with ASICS' quality controls come with the ASICS Warranty.

107.   Because Defendants are not Authorized Retailers of ASICS products and do not comply with ASICS' quality controls, the products they sell bearing the ASICS Trademarks do not come with the ASICS Warranty.

108.   Because the products Defendants sell do not come with the ASICS Warranty, they are materially different from genuine ASICS products.

109.   The ASICS Warranty is a material component of genuine ASICS products.  Consumers considering whether to purchase ASICS products would find it relevant to their purchasing decision to know whether the product they are purchasing is covered by the ASICS Warranty.  Consumers who purchase ASICS products with the ASICS Warranty receive the peace of mind that they are receiving a high-quality product, that ASICS stands behind the product, and that they can get a refund if they are not completely satisfied.

110.   Defendants' unauthorized sale of non-genuine products bearing the ASICS Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine ASICS products that come with the ASICS Warranty when, in fact, they are not.

### Defendants Are Tortiously Interfering with
### ASICS' Agreements with Its Contractual Partners

111.   Upon information and belief, Defendants have purchased ASICS products from ASICS contractual partners for purposes of unlawfully infringing upon and materially damaging the value of the ASICS Trademarks by reselling the products on the Internet outside of ASICS' quality controls.

112.   ASICS' agreements with its contractual partners prohibit them from selling ASICS products to third parties, like Defendants, engaged in unauthorized online sales of ASICS products.

113.   Defendants have known of this prohibition since, at the latest, approximately September 30, 2025.  On that date, ASICS mailed a cease-and-desist

letter to Defendants, explaining that ASICS has agreements with its contractual partners that prohibit them from selling ASICS products in such a manner.

114.    ASICS' letter also informed Defendants that, by purchasing ASICS products from its contractual partners for the purpose of reselling them, they were causing a breach of the agreement between ASICS and its contractual partners and were interfering with ASICS' agreements and business relationships.

115.    ASICS' September 30, 2025 letter also advised Defendants that if they continued to acquire products from ASICS' contractual partners and then resold the products, they would be liable for tortiously interfering with ASICS' contracts and business relationships.

116.    Despite being provided this information, upon information and belief, Defendants have continued to acquire ASICS products from ASICS' contractual partners and then resold the products.

117.    Upon information and belief, Defendants do not disclose to the contractual partners that they intend to resell the products they purchase in the manner described herein.

118.    Upon information and belief, Defendants willfully and knowingly induced, and are continuing to induce, unknown contractual partners to breach their agreements with ASICS so that Defendants can acquire ASICS products and unlawfully infringe upon the ASICS Trademarks by reselling the products.

**Infringing Products Bearing the ASICS Trademarks That Defendants Are Selling Are Being Stored All Around the United States, Including in California**

119.    Individuals and entities who wish to sell products through storefronts on Amazon must enter into a contract with Amazon.com Services LLC ("Amazon.com").

120.    Once a seller has entered into a contract with Amazon.com, the seller must choose whether it will: (i) itself store and ship products; or instead (ii) pay ongoing fees to have Amazon.com store the seller's products at "fulfillment centers"

1  (i.e., warehouses) operated by Amazon.com, and ship products to consumers once
2  they have been purchased.  Amazon.com offers the second method of storage and
3  fulfillment through a service called "Fulfillment By Amazon."

4      121.  When a seller chooses to use the "Fulfillment By Amazon" service, it
5  retains ownership of the products it stores at Amazon fulfillment centers and can have
6  Amazon.com ship products back to the seller before they have been purchased by
7  customers.

8      122.  However, sellers who use the "Fulfillment By Amazon" are not able to
9  control where Amazon.com stores sellers' products.  Sellers who use the "Fulfillment
10  By Amazon" service must agree to "Fulfillment by Amazon Service Terms" set forth
11  in their contract with Amazon.com.  These terms provide that Amazon.com can
12  transfer sellers' products between fulfillment centers without notice or approval from
13  sellers, although sellers are able to see—through their electronic Amazon accounts—
14  where their products are currently being stored at any time.

15      123.  Amazon.com has more than 175 fulfillment centers spread around the
16  United States, including several in California.  *See* Amazon FBA Locations, AMZ
17  PREP, https://amzprep.com/fba-locations/, (last visited Oct. 29, 2025).  Amazon.com
18  also promises to customers that all product orders it fulfills—including products that
19  third-party sellers on Amazon sell to customers while using the "Fulfillment By
20  Amazon" service—will be delivered within two days of purchase.  To live up to this
21  promise, Amazon.com carefully distributes all products it stores for third-party sellers
22  between its fulfillment centers, all around the country, to ensure that products can be
23  delivered within two days of purchase no matter where in the United States they are
24  ordered from.

25      124.  As a result, sellers who use Amazon.com's "Fulfillment By Amazon"
26  service have their products stored all around the country by Amazon.com.

27      125.  Defendants are using Amazon.com's "Fulfillment By Amazon" service
28  for many of the infringing products bearing the ASICS Trademarks they are selling

- 31 -

through their Amazon Storefront, as shown below (highlighted):



126. Defendants are intentionally using Amazon.com's vast, established infrastructure to sell and ship infringing products bearing the ASICS Trademarks to consumers nationwide, including customers located in California, and is paying Amazon to do so through commissions and fees. Defendants have not taken any steps to prevent residents of California from purchasing products bearing the ASICS Trademarks from Defendants' Amazon Storefront.

**ASICS Has Suffered Substantial Harm as a Result of Defendants' Conduct**

127. As set forth above, the unauthorized sale of products bearing the ASICS Trademarks through unauthorized sellers such as Defendants has caused significant harm to the ASICS brand.

128. When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with ASICS. As such, Defendants' ongoing sale of non-genuine products bearing the ASICS Trademarks harms the ASICS brand.

129. ASICS has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

130.   ASICS has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

131.   ASICS is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine products bearing the ASICS Trademarks, causing continued irreparable harm to ASICS' reputation, goodwill, relationships, intellectual property, and brand integrity.

132.   Furthermore, Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

133.   Defendants' disregard of communications from ASICS and continuation of selling of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

134.   Defendants' willful violations of the ASICS Trademarks and continued pattern of misconduct demonstrate intent to harm ASICS.

## FIRST CAUSE OF ACTION

### Trademark Infringement

### 15 U.S.C. §§ 1114 and 1125(a)(1)(A)

135.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

136.   ASICS is the owner or exclusive licensee of each of the ASICS Trademarks.

137.   The ASICS Trademarks are registered with the United States Patent and Trademark Office.

138.   The ASICS Trademarks are valid and subsisting trademarks in full force and effect.

139.   Defendants willfully and knowingly used, and continue to use, the ASICS Trademarks in interstate commerce for purposes of selling non-genuine

1  products bearing the ASICS Trademarks on the Internet without ASICS' consent.

2  140.  The products Defendants sell bearing the ASICS Trademarks are not

3  authorized for sale by ASICS.

4  141.  The products Defendants sell bearing the ASICS Trademarks are

5  materially different from genuine ASICS products because they are not subject to, do

6  not abide by, and interfere with the legitimate and substantial quality controls that

7  ASICS has established.

8  142.  The products Defendants sell bearing the ASICS Trademarks are also

9  materially different from genuine ASICS products because they do not come with the

10  ASICS Warranty, which accompanies genuine ASICS products.

11  143.  Defendants' unauthorized sale of materially different products bearing

12  the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive

13  consumers because it suggests that the products Defendants offer for sale are genuine

14  ASICS products when they are not.

15  144.  Defendants' unauthorized sale of materially different products bearing

16  the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive

17  consumers because it suggests that the products Defendants offer for sale are

18  sponsored, authorized, or otherwise connected with ASICS when, in fact, they are

19  not.

20  145.  Defendants' unauthorized use of the ASICS Trademarks has infringed

21  upon and materially damaged the value of the ASICS Trademarks and caused

22  significant damage to ASICS' business relationships.

23  146.  As a proximate result of Defendants' actions, ASICS has suffered, and

24  will continue to suffer immediate and irreparable harm.  ASICS has also suffered, and

25  continues to suffer, damage to its business, goodwill, reputation, and profits in an

26  amount to be proven at trial.

27  147.  ASICS is entitled to recover its damages caused by Defendants'

28  infringement of the ASICS Trademarks and disgorge Defendants' profits from their

- 34 -
**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1  willfully infringing sales and unjust enrichment.

2      148.   ASICS is entitled to injunctive relief under 15 U.S.C. § 1116 because it

3  has no adequate remedy at law for Defendants' infringement and unless Defendants

4  are permanently enjoined, ASICS will suffer irreparable harm.

5      149.   ASICS is entitled to enhanced damages and attorneys' fees under 15

6  U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad

7  faith infringed on the ASICS Trademarks.

8                    **SECOND CAUSE OF ACTION**

9                       **Unfair Competition**

10                       **15 U.S.C. § 1125(a)**

11     150.   ASICS hereby incorporates the allegations contained in the foregoing

12  paragraphs as if fully set forth herein.

13     151.   As set forth above, Defendants are selling non-genuine products bearing

14  the ASICS Trademarks that are materially different from genuine ASICS products.

15     152.  Defendants' sale of non-genuine products bearing the ASICS

16  Trademarks is likely to cause consumer confusion and lead consumers to believe that

17  those products are affiliated with, connected with, associated with, sponsored by, or

18  approved by ASICS when they are not.

19     153.   Defendants' conduct constitutes unfair competition under the Lanham

20  Act, 15 U.S.C. § 1125(a).

21     154.   ASICS is entitled to injunctive relief under 15 U.S.C. § 1116 because it

22  has no adequate remedy at law for Defendants' infringement and unless Defendants

23  are permanently enjoined, ASICS will suffer irreparable harm.

24     155.   ASICS is entitled to enhanced damages and attorneys' fees under 15

25  U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad

26  faith infringed on the ASICS Trademarks.

27                    **THIRD CAUSE OF ACTION**

28                 **Unfair and Deceptive Business Practices**

**Cal. Bus. & Prof. Code §§ 17200, et seq.**

156.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

157.   Defendants willfully and knowingly used, and continue to use, the ASICS Trademarks in interstate commerce for the purpose of advertising, marketing, and selling products bearing the ASICS Trademarks without the consent of ASICS.

158.   The products Defendants sell are not genuine ASICS products because the products are not authorized for sale by ASICS, are not subject to ASICS' quality controls, and are materially different from genuine ASICS products.

159.   Defendants' unauthorized sale of products bearing the ASICS Trademarks interferes with ASICS' ability to exercise quality control over products bearing the ASICS Trademarks because ASICS is unable to audit Defendants to confirm they are complying with ASICS' quality control requirements and/or close Defendants' accounts if they fail to comply with ASICS' quality control requirements.

160.   The products Defendants sell are materially different from genuine ASICS products because they are not subject to, and interfere with, ASICS' quality controls.

161.   The products Defendants sell are materially different from genuine ASICS products because they do not come with the ASICS Warranty or customer service benefits that accompany genuine ASICS products.

162.   Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to ASICS quality control requirements when they are not.

163.   Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS

Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with the ASICS Warranty and customer service benefits that accompany genuine ASICS products when they do not.

164. Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic ASICS products when they are not.

165. Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with ASICS when they are not.

166. Defendants' unauthorized and deceptive use of the ASICS Trademarks is material and likely to influence customers to purchase the products it sells, as customers are likely to believe that the products Defendants advertise using the ASICS Trademarks are genuine ASICS products that are subject to ASICS' quality controls and come with the ASICS Warranty when they do not.

167. Defendants' actions constitute unfair, deceptive, untrue, and/or misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

168. Defendants have also knowingly and willfully obtained ASICS products through unlawful means and in violation of ASICS' agreements with its Authorized Retailers. Specifically, Defendants have continued to acquire ASICS products through ASICS' Authorized Retailers for purposes of reselling those products on the Internet despite knowing that ASICS' agreements with its Authorized Retailers prohibit them from selling products to third parties for purposes of resale.

169. Defendants' actions constitute unlawful, unfair, and/or fraudulent

1  business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

2  170.   As a result of Defendants' unlawful actions, ASICS has suffered, and

3  continues to suffer, irreparable harm.   ASICS has also suffered, and continues to

4  suffer, damages, including, but not limited to, loss of business, goodwill, reputation,

5  and profits in an amount to be proven at trial.

6  171.   ASICS is entitled to injunctive relief under Cal. Bus. & Prof. Code §

7  17203 because it has no adequate remedy at law for Defendants' infringement and,

8  unless Defendants are permanently enjoined, ASICS will suffer irreparable harm.

9  <u>**FOURTH CAUSE OF ACTION**</u>

10  **Common Law Unfair Competition**

11  172.   ASICS hereby incorporates the allegations contained in the foregoing

12  paragraphs as if fully set forth herein.

13  173.   Defendants' unauthorized advertisement and sale of non-genuine

14  products bearing the ASICS Trademarks interferes with ASICS' quality controls and

15  its ability to exercise quality control over products bearing the ASICS Trademarks.

16  174.   Defendants' unauthorized advertisement and sale of non-genuine

17  products bearing the ASICS Trademarks is likely to cause confusion, cause mistake,

18  or deceive consumers because Defendants' use of the ASICS Trademarks suggests

19  that the products Defendants offer for sale are covered by the ASICS Warranty and

20  are subject to, and abide by, ASICS' quality controls when, in fact, they do not.

21  175.   Defendants' unauthorized advertisement and sale of non-genuine

22  products bearing the ASICS Trademarks is likely to cause confusion, cause mistake,

23  or deceive consumers because Defendants' use of the ASICS Trademarks suggests

24  that the products Defendants offer for sale are genuine ASICS products when, in fact,

25  they are not.

26  176.   Defendants' unauthorized advertisement and sale of non-genuine

27  products bearing the ASICS Trademarks is likely to cause confusion, cause mistake,

28  or deceive consumers because Defendants' use of the ASICS Trademarks suggests

that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with ASICS when, in fact, they are not.

177.   Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse consumers and induce them to believe that Defendants' products are genuine ASICS products when, in fact, they are not.

178.   Defendants' unauthorized sale of products bearing the ASICS Trademarks and unauthorized use of the ASICS Trademarks in advertising infringes the ASICS Trademarks and constitutes unfair competition at common law.

179.   Defendants' unauthorized use of the ASICS Trademarks has materially damaged the value of the ASICS Trademarks, caused significant damage to ASICS' business relations, and infringed the ASICS Trademarks.

180.   As a result, ASICS has suffered, and continues to suffer, immediate and irreparable harm.  ASICS has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

181.   ASICS is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## FIFTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

182.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

183.   ASICS has contracts with its Authorized Retailers who sell ASICS's products (the "Contracts").  The Contracts prohibit Authorized Retailers from selling ASICS's products to third parties, such as Defendants, who are not Authorized Retailers and who intend to resell the products.

184.   Defendants know and, at all relevant times described herein, knew of

1  ASICS's Contracts with its Authorized Retailers who sell ASICS's products.

2      185.  Defendants are not Authorized Retailers of ASICS's products.

3      186.  Defendants have sold—and continue to sell—products bearing the
4  Trademarks through their Amazon Storefront.

5      187.  Based on these facts, it is plausible and a reasonable inference that
6  Defendants acquired the products they are reselling from one or more of ASICS's
7  Authorized Retailers.

8      188.  Defendants purchased products from Authorized Retailers for the
9  purpose of reselling them on the Internet, which prevented performance of at least
10 one or more of the Contracts and/or made performance of the Contracts for ASICS
11 more expensive or difficult.

12     189.  Defendants, without legal right, privilege, or justification, intended to
13 disrupt the performance of one or more of the Contracts, or knew that disruption of
14 one or more of the Contracts was certain or substantially certain to occur as a result of
15 their conduct.

16     190.  Defendants' actions have caused or were a substantial factor in causing
17 ASICS to suffer, and continue to suffer, substantial harm, including loss of sales and
18 damage to ASICS's existing and potential business relations with one or more of
19 ASICS's Authorized Retailers, in an amount to be proven at trial, and Defendants'
20 actions were a substantial factor in causing ASICS's harm.

21                        **PRAYER FOR RELIEF**

22     WHEREFORE, ASICS prays for relief and judgment as follows:

23     A.    Judgment in favor of ASICS and against Defendants in an amount to be
24 determined at trial including, but not limited to, compensatory damages, lost profits,
25 damage to ASICS' reputation and loss of goodwill, statutory damages, treble
26 damages, consequential damages, restitution, including disgorgement of Defendants'
27 profits, and pre-judgment and post-judgment interest, as permitted by law;

28     B.    Preliminary and permanent injunctions enjoining Defendants and any

employees, agents, servants, officers, attorneys, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

  i)  Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the ASICS Trademarks;

  ii)  Prohibiting the Enjoined Parties from using any of the ASICS Trademarks in any manner, including advertising on the Internet;

  iii)  Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the ASICS Trademarks;

  iv)  Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ASICS Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

  v)  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ASICS' products, or any of the ASICS Trademarks;

  vi)  Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the ASICS Trademarks which associate ASICS' products or the ASICS Trademarks with the Enjoined Parties or the

1    Enjoined Parties' websites;

2    vii)    Requiring the Enjoined Parties to take all action to remove the

3    ASICS Trademarks from the Internet, including, but not limited

4    to, third-party marketplace websites such as www.amazon.com;

5    and

6    viii)   Requiring the Enjoined Parties to take all action to remove, or

7    cause to be removed, any customer reviews of products bearing

8    ASICS' trademarks that were sold by Defendants on third-party

9    marketplace   websites   including,   but   not   limited   to,

10    www.amazon.com and www.ebay.com.

11    C.    An award of attorneys' fees, costs, and expenses.

12    D.    Such other and further relief as the Court deems just, equitable, and

13    proper.

14    ## JURY DEMAND

15    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ASICS demands a

16    trial by jury on all issues so triable.

17

18    Dated:  November 6, 2025          Respectfully submitted,

19

20    */s/ Adam S. Hamburg*
     Adam Hamburg (SBN 247127)

21    VORYS SATER SEYMOUR AND
     PEASE LLP

22    2211 Michelson Dr. Suite 500

23    Irvine, CA 92612
     Telephone: (949) 526-7908

24    Facsimile: (949) 526-7908

25    ashamburg@vorys.com

26    ***Attorneys for Plaintiff***

27    ***ASICS AMERICA CORPORATION***

28

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**